| | |
|---|---|
| STATE OF MAINE<br>OXFORD, ss. | DISTRICT COURT<br>LOCATION: South Paris<br>DOCKET NO. |

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-22A<br><br>PLAINTIFF<br><br>v.<br><br>JEFFREY DENNER A/K/A JEFFREY A. DENNER, INDIVIDUALLY AND AS TRUSTEE OF THE WORDS END TRUST UNDER TRUST AGREEMENT DATED 12/6/2001<br><br>DEFENDANT<br><br>and<br><br>HORSESHOE POND LOT OWNERS ASSOCIATION, DEPARTMENT OF THE TREASURY-INTERNAL REVENUE SERVICE, STATE OF MAINE-MAINE REVENUE SERVICES AND DEPARTMENT OF JUSTICE, DISTRICT OF MAINE<br><br>PARTIES IN INTEREST | <u>COMPLAINT FOR FORECLOSURE BY CIVIL ACTION</u><br><br>TITLE TO REAL ESTATE IS INVOLVED |

**337 Horseshoe Pond Road a/k/a Lot #10 Horseshoe Pond Road, Stoneham, Maine
Mortgage recorded in Oxford County Registry of Deeds in Book 451, Page 795**

NOW COMES the Plaintiff, HSBC Bank USA, National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-22A, by and through its attorneys, Bendett & McHugh, P.C., and complains against the Defendant pursuant to 14 M.R.S. § 6321 et seq., saying further as follows:

1

RECEIVED
2019 OCT -8  AM 10: 18
USAO PORTLAND, ME

## PARTIES

1. HSBC Bank USA, National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-22A, ("Plaintiff") is a corporate trustee, having an address located at 8950 Cypress Waters Boulevard, Coppell, TX 75019.

2. The Words End Trust ("Defendant") is the record owner, subject to Plaintiff's mortgage (*inter alia*), of the property identified above ("Property"), which is located at 337 Horseshoe Pond Road, Stoneham, in the County of Oxford in the State of Maine.

3. Horseshoe Pond Lot Owners Association, ("Party In Interest") upon information and belief, having an address located c/o J. Thomas Hughes, P.O. Box 266, Lovell, ME 04051.

4. Department of the Treasury-Internal Revenue Service, ("Party In Interest") upon information and belief, having an address located at 1111 Constitution Avenue, NW, Washington, DC 20224.

5. State of Maine-Maine Revenue Services, ("Party In Interest") upon information and belief, having an address located at 24 State House Station, Augusta, ME 04333-0024.

6. Department of Justice, District of Maine, ("Party In Interest") upon information and belief, having an address located c/o U.S. Attorney's Office, 202 Harlow Street, Bangor, ME 04401.

## FACTS

7. Defendant The Words End Trust, is the owner of certain real property located at 337 Horseshoe Pond Road a/k/a Lot # 10 Horseshoe Pond Road, Stoneham, Maine (the "Premises") by virtue of a deed from Alexander Cecil n/k/a Alex Cecil and Eric Ritter to Defendant The Words End Trust, dated November 19, 2001, and recorded in Oxford County Registry of Deeds on December 7, 2001 in Book 426 at Page 851.

8. On April 17, 2003, Defendant, Jeffrey Denner a/k/a Jeffrey A. Denner, Individually and as Trustee of The Words End Trust under Trust Agreement Dated 12/6/01, executed and delivered to First Guaranty Financial Corporation a certain promissory note in the original principal amount of $800,000.00 (the "Note").

9. The Plaintiff is entitled to enforce the Note as it was endorsed to Lehman Brothers Bank F.S.B., thereafter endorsed to Lehman Brothers Holdings, Inc. and subsequently endorsed in blank.

10. Plaintiff certifies that the owner of the Note is HSBC Bank USA, National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-22A.

11. To secure said Note in the amount of $800,000.00 Defendant, Jeffrey Denner a/k/a Jeffrey A. Denner, as Trustee of The Words End Trust under Trust Agreement Dated 12/6/01, executed and delivered to First Guaranty Financial Corporation, a mortgage dated April 17, 2003 and recorded in the Oxford County Registry of Deeds in Book 451 at Page 795 (the "Mortgage"). A more particular description of the mortgaged real estate is provided by and through Exhibit A attached hereto and made a part hereof.

12. Said Mortgage was assigned to Lehman Brothers Bank, FSB by an Assignment of Mortgage, dated April 22, 2003 and recorded on January 23, 2004 in Book 469 at Page 254 of the Oxford County Registry of Deeds. Said Mortgage was thereafter assigned to Mortgage Electronic Registration Systems, Inc. by an Assignment of Mortgage, dated June 1, 2004 and recorded on June 14, 2004 in Book 477 at Page 306 of the Oxford County Registry of Deeds. Said Mortgage was thereafter assigned to CitiMortgage, Inc. by an Assignment of Mortgage, dated January 10, 2013 and recorded on January 18, 2013 in Book 607 at Page 233 of the Oxford County Registry of Deeds. Said Mortgage was subsequently assigned to Plaintiff by an Assignment of Mortgage, dated March 27, 2017 and recorded on March 31, 2017 in Book 655 at Page 836 of the Oxford County Registry of Deeds. Said Mortgage was thereafter assigned to CitiMortgage, Inc. by an Assignment of Mortgage, dated January 31, 2018 and recorded on February 12, 2018 in Book 666 at Page 278 of the Oxford County Registry of Deeds. Said Mortgage was subsequently re-assigned to Plaintiff by an Assignment of Mortgage, dated September 10, 2018 and recorded on September 17, 2018 in Book 673 at Page 289 of the Oxford County Registry of Deeds.

13. Plaintiff, directly or through its agent, is in possession of the original Note, Mortgage and any assignments.

14. Plaintiff is the party entitled to collect the debt evidenced by said Note and is the party entitled to enforce the Mortgage, and has the right to foreclose the Mortgage.

15. Horseshoe Pond Lot Owners Association claims or may claim an interest in the Premises if there are any delinquent association fees for assessments as such against the property pursuant to 33 M.R.S. A. §1603-116, et. seq.

16. State of Maine-Maine Revenue Services claims or may claim an interest in the Premises by virtue of a lien, in the amount of $38,147.65, dated May 29, 2007 and recorded in Book 533 at Page 147 of the Oxford County Registry of Deeds; reference is also made to Notice of Lien Extension recorded in book 652 page 642.

17. State of Maine-Maine Revenue Services claims or may claim an interest in the Premises by virtue of a lien, in the amount of $10,875.04, dated May 22, 2008 and recorded in Book 547 at Page 717 of the Oxford County Registry of Deeds; reference is also made to Notice of Lien Extension recorded in book 665 page 262.

18. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $288,274.19, dated August 24, 2010 and recorded in Book 577 at Page 236 of the Oxford County Registry of Deeds.

19. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $296,023.21, dated November 30, 2010 and recorded in Book 580 at Page 455 of the Oxford County Registry of Deeds.

20. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $1,653,431.09, dated March 21, 2011 and recorded in Book 584 at Page 145 of the Oxford County Registry of Deeds.

21. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $285,121.22, dated May 12, 2006 and recorded in Book 615 at Page 224 of the Oxford County Registry of Deeds.

22. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $285,121.22, dated March 21, 2011 and recorded in Book 615 at Page 225 of the Oxford County Registry of Deeds.

23. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $221,913.00, dated June 20, 2014 and recorded in Book 624 at Page 738 of the Oxford County Registry of Deeds.

24. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $485,498.75, dated March 29, 2005 and recorded in Book 624 at Page 954 of the Oxford County Registry of Deeds.

25. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $485,498.75, dated March 29, 2005 and recorded in Book 626 at Page 775 of the Oxford County Registry of Deeds.

26. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $138,981.34, dated May 12, 2006 and recorded in Book 630 at Page 753 of the Oxford County Registry of Deeds.

27. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $138,981.34, dated March 21, 2011 and recorded in Book 630 at Page 755 of the Oxford County Registry of Deeds.

28. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $143,903.38, dated January 30, 2007 and recorded in Book 643 at Page 843 of the Oxford County Registry of Deeds.

29. Department of the Treasury-Internal Revenue Service claims or may claim an interest in the Premises by virtue of a lien, in the amount of $143,903.38, dated March 21, 2011 and recorded in Book 643 at Page 844 of the Oxford County Registry of Deeds.

30. Department of Justice, District of Maine claims or may claim an interest in the Premises by virtue of a Judgment, in the amount of $2,812,630.21, dated June 8, 2018 and recorded in Book 670 at Page 591 of the Oxford County Registry of Deeds.

31. Defendant is presently in default of the Note, having failed to make the monthly payment due January 1, 2016, and having failed to make all payments due thereafter. As a result thereof, Defendant has breached a condition of the Mortgage.

32. In compliance with the Note and Mortgage and/or 14 M.R.S.A. § 6111, on or about July 24, 2019, Plaintiff caused a Notice of Default to be sent to the mortgagor and any co-signor against whom the mortgagee is enforcing the obligation secured by the mortgage, by certified mail, return receipt requested and/or by regular mail, postage prepaid.

33. Defendant has failed to cure the default. In accordance with the Note and the Mortgage, the Plaintiff has declared the entire principal amount outstanding, accrued interest thereon, and all other sums due under the Note and Mortgage to be presently due and payable.

34. As of April 10, 2019 the unpaid principal balance due to the Plaintiff under the terms of the Note and Mortgage is $714,816.44 plus interest, late charges, expenses and reasonable attorneys' fees and costs.

35. Plaintiff anticipates that additional disbursements will be made for attorneys' fees and other services rendered during the foreclosure and sale.

36. By virtue of Defendant's breach of condition, Plaintiff hereby demands a foreclosure and sale of said real estate.

WHEREFORE, Plaintiff prays that this Honorable Court:

A. Determine that there has been a breach of condition of the Mortgage;

B. Determine the amounts due under the Note and secured by the Mortgage, including principal, interest, reasonable attorney's fees, court costs and other expenses;

C. Find that the Defendant is liable for any deficiency balance remaining due to Plaintiff after the sale of the mortgaged real estate and application of the proceeds of sale (this prayer is void for any Defendant that did not execute the Note or Guaranty and for any Defendant who has been granted discharge in bankruptcy);

D. Issue a Judgment of Foreclosure and Sale in conformity with Title 14, M.R.S. § 6322;

E.  Order exclusive possession of the real estate to Plaintiff upon the expiration of the statutory ninety (90) day period of redemption and direct the clerk to issue a Writ of Possession at the request of Plaintiff; and

F.  Grant such other and further relief as the Court may determine proper.

Respectfully submitted,

HSBC Bank USA, National Association, as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2003-22A

By its Attorneys,
BENDETT & MCHUGH, P.C.

Dated: September 17, 2019  By: _____
Loraine L. Hite, Esq.
Maine Bar # 7669
Bendett & McHugh, PC
30 Danforth Street, Suite 104
Portland ME, 04101
207-221-0016

## EXHIBIT A

A certain lot or parcel of land, with the buildings thereon situated in Stoneham, Oxford County, Maine, and designated as Lot numbered Ten (#10) on plan entitled "Plan of land in Stoneham Maine, owned by Richard Krock" surveyed and drawn in 1971 and 1972 by Lawrence M. Gray, Registered Land Surveyor, and duly recorded in Oxford Western District Registry of Deeds in Plan Book 4, Page 50. Reference is hereby made to said plan for more particular description of the parcel hereby conveyed. Reference is also made to an earlier version of said plan recorded in said Registry in Plan Book 4, at Page 31 for the courses and distance as surveyed along the shore line of Horseshoe Pond.

Being the property conveyed to the grantor by deed dated December 18, 1986, and recorded in Oxford Western District Registry of Deeds, in Book 283, Page 774, from Richard H. Krock, Trustee of the Second Beej and Rich Hamilton Realty Trust.

The grantor hereby covenants and warrants that electrical service has been extended to and is available for all lots shown on the above plan. Grantor further covenants and warrants that there remains no obligation to the owner of the herein conveyed premises to pay any minimum annual or monthly charge over and above actual usage for the operation of said extension of said electric service line.

This property is subject to and has the benefit of the following common right of way, exceptions and reservations and restrictions, set forth in said deed as follows:

### COMMON RIGHT OF WAY:

Including in this conveyance, appurtenant to the land hereby conveyed, is a right of way for all purposes, in common with Richard H. Krock, Trustee, his successors and assigns, over the right of way, 3 rods in width, located in the Town of Lovell, Maine and leading from the end of the town road at the southerly end of Horseshoe Pond, near its outlet, to the

Stoneham Town Line, which forms the southerly boundary of land now or formerly of Richard H. Krock, Trustee (being the same 3 rod right of way conveyed in deed of Lenora P. McAllister to Sybil A. Stone, et als., dated September 3, 1970, and recorded in Oxford Western District Registry of Deeds Book 202, Page 279); and also over the right of way, 4 rods in width, as laid out by Richard H. Krock, Trustee, running northerly from the Stoneham Town Line from the end of the above 3 rod right of way to, and adjoining the land hereby conveyed. This grant of a common right of way is made on the express condition (during breach of which the Grantor's right of user shall be suspended) that the Grantee shall annually pay to Horseshoe Pond Lot Owners Association an annual payment towards maintenance and improvements of all such roads proportional to the amount the Grantee's road frontage bears to the total common road frontage on the entire lot now or formerly of Richard H. Krock, Trustee, on Horseshoe Pond Peninsula as originally acquired by Richard H. Krock, Trustee. Such payment shall be annually determined by an informal or formally organized association representing the lot owners concerned and billed to the Grantee who shall make payment of the same within 30 days. It is understood that such maintenance and improvement shall be limited to a gravel-surfaced road, adequate for all season motor vehicle use, and shall not include provisions for snow removal in any year unless the prior consent of at least ¾ of the contributors is obtained. Should legal action be instituted to effectuate collections against any Grantee hereunder, such Grantee agrees to pay all costs of collection, including attorneys' fees. The rights and duties hereunder, shall be transferred to an informal or formally organized association representing the lot owners concerned. By the acceptance of this deed, Grantee agrees, upon organization of any such association to become and remain a supporting member thereof.

EXCEPTIONS AND RESERVATIONS:

Excepting and reserving to Richard H. Krock, Trustee, his successors and assigns, where applicable, as appurtenant to all remaining land of Richard H. Krock, Trustee, the following easements:

A.  The right to install and maintain utility pole lines and/or water pipe lines within the limits of all roadways over which the Grantee may be given rights of way herein, but only in such manner as not unreasonably to interfere with traffic thereover.

B. The right to install and maintain utility poles and lines over and across the land herein conveyed, together with the fixtures and wires connected thereto, and also the right to attach wires and appliances for guying where necessary, and also the right to enter upon said land for the purposes of cutting and trimming such tree or trees as may from time to time in the judgement of said Richard H. Krock, Trustee, his successors and assigns, interfere with or endanger said utility lines or their operation. The location of said utility lines shall be determined by the public utility furnishing service thereover with the approval of Richard H. Krock, Trustee, his successors and assigns, and shall not unreasonably interfere with the use of Grantee's land for residential purposes.

C. The right to install underground water pipelines crossing the land hereby conveyed, together with the further right to enter upon the land hereby conveyed for purposes of inspecting, repairing or replacing said water pipelines, provided that said water pipelines shall be located so as to interfere with as little as reasonably possible, the improvement of the land hereby conveyed, and provided further that any party disturbing the surface of the soil for the purpose of inspection, repair, replacement of said water pipeline shall promptly, at his own expense, restore the surface of the ground to its former state.

D. Subject to such rights of flowage over the land hereby conveyed as may appear of record, or otherwise.

USE RESTRICTIONS:

As evidenced by the delivery and acceptance of this deed, the parties hereto, for themselves, their heirs and assigns, agree that for 20 years from December 18, 1986, the land hereby conveyed shall be subject to the following restrictions covering its use, which shall be construed as real covenants running with the land, enforceable in equity by said Richard H. Krock, Trustee, his successors and assigns:

1. Neither the property hereby conveyed, nor any part of it, shall ever be used for any commercial purpose whatsoever, but solely for private residential purposes. This restriction shall not be construed to prevent rental or lease of any habitation on said land for private residential purposes.

9

2. The parcel of land hereby conveyed shall not be sub-divided, but shall be retained throughout the period of these restriction as a single parcel.

3. Not more than one principal dwelling house designed for single family residential use shall be constructed and maintained within each 400', or major fraction thereof, of shore frontage on the parcel conveyed without prior written approval from said Richard H. Krock, Trustee, his successors and assigns. This restriction shall not, however, prevent the erection of auxiliary structures such as garages, boathouses, storage buildings, private guest house, or the like, as the owner may desire to construct and maintain in connection with the residential use of said land.

4. All wharves, docks, buildings and other structures shall be located at least 50 feet from the exterior boundary lines of said property, and at least 150 feet from the water's edge of Horseshoe Pond, provided that a dock may be erected at the water's edge so long as it is not located within 50 feet of either sideline, provided that, should the Grantee hereafter acquire adjacent shore frontage, then this restriction shall apply only to the exterior sidelines of the entire tract from time to time held in the same ownership.

5. All structures erected on any cottage lot shall be promptly and expeditiously completed as to their exteriors, including the finish painting and/or staining within twelve months after construction is commenced. All structures shall be finished in neatly applied clapboards, shingles, log or board and batten siding, or in equal quality of exterior finish with the following types of exterior siding expressly prohibited, namely: tar papers, tar shingles, other types of tar shingles, slabs and metal siding, asbestos and asphalt shingles. Finish roofing may consist of any form of shingles, not consist of tarred paper, rolled roofing or metal roofing. Each principal residential building shall contain at least 1000 square feet of floor area, exclusive of porches, breezeways, decks or garages, provided that a lesser floor area may be permitted if plans are previously submitted to said Richard H. Krock, Trustee, his successors and assigns, and its or their prior written approval obtained. All exteriors must be of conservative colors such as grey, brown or green unless prior written approval for another color is obtained from said
Richard H. Krock, Trustee.

6. In the event the owner of said property should wish to sell or rent the premises hereby conveyed, such owner shall use an advertising medium other than the placing of signs upon the premises indicating them to be for sale or rent.

7. No temporary residential structures, such as, but not limited to, residential tents and/or house trailers, or other form of mobile home, whether or not left on wheels, shall be permitted on the premises.

8. An adequate shield of trees and/or shrubbery shall be at all times maintained within the 50 foot strip constituting the back and sidelines of any parcel eligible hereunder for the construction of a principal dwelling house. This shall not prevent such cutting as may be required to provide reasonable access onto the land, or to prevent the removal of deceased, dying or unsightly growth. Grantee agrees not to remove larger trees, even though not within this restricted 50' strip, except where reasonably necessary for the erection of the buildings and their normal appurtenances, such as moderate sized lawns, beach area or the like.

9. No building shall be erected upon the land hereby conveyed until plans for the same have been submitted to said Richard H. Krock, Trustee, his successors and assigns, and its approval obtained, which approval shall not be unreasonably withheld. Where any building has been erected on the land herein conveyed for two years, without commencement in Oxford County of any legal action to enforce compliance with these restrictions, then thereafter it shall be conclusively presumed that any such building received all approvals required by these restrictions.

10. Any leach bed for septic sewerage disposal installed on the property shall be a minimum of 300 feet from the mean high water mark of the shoreline to conform with the laws or requirements of the State of Maine or any of its agencies or sub-divisions; whichever is greater.

11. These provisions and restrictions are intended to be binding on and inure to the benefit of the parties to this deed, and their respective heirs, successors and assigns. Where the identity of the parties would so indicate, the words and pronouns indicating gender and number, and other relative words, shall be deemed to mean the masculine, feminine, neuter and singular and/or plural, as the case may be.

    To the extent more restrictive, this property is subject to two Findings of Fact and Order of the State of Maine regarding

this development respectively recorded in said Registry at Book 362, Pages 684 and 872 which are incorporated herein and to be deemed a part hereof by reference.

George H. Nelson, Jr. as Trustee and sole beneficiary of the Trust for his life time, hereby covenants and represents that said Trust remains in full force and effect and that the authority of said Trustee to convey hereby is set forth in the Trust Declaration and no purchaser is required to look to the application of monies paid to the Trustee. See said Trust Declaration recorded as aforesaid and the modifications thereto recorded in said Registry Book 271, Pages 850, 851, 852 and 853 and at Book 281 Page 579 all of which are intended to be incorporated at length hereunder for purposes of the representations made hereunder.

Meaning and Intending to convey all and the same premises as conveyed to Alexander Cecil and Eric Ritter by Warranty Deed from George H. Nelson, Jr., Trustee of the G.H. Nelson Realty Trust dated June 10, 1987 and recorded at Oxford (W.D.) Registry of Deeds Book 374, Page 645.

MEANING AND INTENDING to describe and convey all and the same premises conveyed to The Words End Trust by warranty deed of Alexander Cecil and Eric Ritter dated 6 December 2001 and recorded 7 December 2001 at Oxford County (W.D.) Registry of Deeds Book 426, Page 851.

| | |
|---|---|
| STATE OF MAINE<br>OXFORD, ss. | DISTRICT COURT<br>LOCATION: SOUTH PARIS<br>DOCKET NO. |

| | | |
|---|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-22A | ) ) ) ) ) ) ) | |
| PLAINTIFF | ) | |
| v. | ) ) | |
| JEFFREY DENNER A/K/A JEFFREY A. DENNER, INDIVIDUALLY AND AS TRUSTEE OF THE WORDS END TRUST UNDER TRUST AGREEMENT DATED 12/6/2001 | ) ) ) ) ) ) | **NOTICE REGARDING ELECTRONIC SERVICE** |
| DEFENDANT | ) | |
| And | ) ) | |
| HORSESHOE POND LOT OWNERS ASSOCIATION, DEPARTMENT OF THE TREASURY-INTERNAL REVENUE SERVICE, STATE OF MAINE-MAINE REVENUE SERVICES AND DEPARTMENT OF JUSTICE, DISTRICT OF MAINE | ) ) ) ) ) ) ) | |
| PARTIES IN INTEREST | ) | |

**NOTICE TO PARTIES:** All parties who are represented by an attorney are subject to the requirements of Electronic Service under Rule 5 of the Maine Rules of Civil Procedure.

**OPT IN:** *If you do not have an attorney*, papers that must be served on you by other parties in this case will be sent to you through the regular mail to your address of record. But you have a choice to request that all papers required to be served on you by other parties in this case be sent instead electronically to your designated email address; and you may also agree to serve by email all papers you are required to serve on other parties in this case.

CV-15 Rev 03-15

Please note: any electronic service that you opt into applies only to papers served on you by other parties, and / or to papers you are required to serve on other parties. It *does not apply to notices, orders, or other papers generated by the court, or to any papers you must file with the court.* You must file all court papers in paper form by mail or in person, and all Court papers will continue to be sent to you by regular mail.

If you choose not to opt in, you do not need to do anything. If you would like to receive and/or serve papers on other parties electronically, you must meet the requirements set forth below. Check the appropriate box(es) and mail (or scan and email) the signed form to all other parties in the case. Do not file this form with the Court.

☐ **Electronic Receipt:** I choose to OPT IN to receive by email documents from other parties in this case. I have reviewed and meet all of the following electronic receipt requirements:
- I have a trusted email account and I have daily access to this account;
- I understand that **I will receive time-sensitive documents** through this email address including documents that may require me to take action in this case;
- This email account has available electronic storage of at least 1 gigabyte;
- This email account accepts emails with attachments of up to 10 megabytes; and
- I will be able to maintain this email account throughout this case.

☐ **Electronic Delivery:** I choose to OPT IN to deliver documents to other parties by email in this case. I have reviewed and meet all of the following electronic delivery requirements:
- I meet all of the requirements for electronic receipt listed above;
- I have the ability to scan and create .pdf files of documents I am required to serve on other parties.

Dated: _____

_____
Self-Represented Party (Signature)

_____
(Print name)

_____
(Print email address)

| | |
|---|---|
| STATE OF MAINE<br>OXFORD, ss. | DISTRICT COURT<br>LOCATION: SOUTH PARIS<br>DOCKET NO. |

| | |
|---|---|
| HSBC BANK USA, NATIONAL ASSOCIATION,<br>AS TRUSTEE FOR STRUCTURED ASSET<br>SECURITIES CORPORATION MORTGAGE PASS-<br>THROUGH CERTIFICATES, SERIES 2003-22A<br><br>PLAINTIFF<br>v.<br><br>JEFFREY DENNER A/K/A JEFFREY A.<br>DENNER, INDIVIDUALLY AND AS<br>TRUSTEE OF THE WORDS END TRUST<br>UNDER TRUST AGREEMENT DATED<br>12/6/2001<br><br>DEFENDANT<br>and<br><br>HORSESHOE POND LOT OWNERS ASSOCIATION<br>DEPARTMENT OF THE TREASURY-INTERNAL<br>REVENUE SERVICE, STATE OF MAINE-MAINE<br>REVENUE SERVICES AND DEPARTMENT OF<br>JUSTICE, DISTRICT OF MAINE<br>PARTIES IN INTEREST | **CLERK'S CERTIFICATE<br>OF FORECLOSURE**<br><br>**TITLE TO REAL ESTATE<br>IS INVOLVED** |

337 Horseshoe Pond Road, Stoneham, Maine
Mortgage recorded in Oxford County Registry of Deeds in Book 451, Page 795

I, _____, clerk, do hereby certify that Plaintiff has filed in the office of the clerk of the above-captioned Court a Complaint for Foreclosure and Sale against Jeffrey Denner a/k/a Jeffrey A. Denner, Trustee of The Words End Trust as Defendant, and Horseshoe Pond Lot Owners Association, Department of the Treasury-Internal Revenue Service, State of Maine-Maine Revenue Services and Department of Justice, District of Maine, as Parties-in-Interest. The property is described in a mortgage deed from Jeffrey Denner a/k/a Jeffrey A. Denner, Trustee of The Words End Trust and recorded in Oxford County Registry of Deeds in Book 451 at Page 795.

The Complaint is dated _____, 20___ and was filed in the Clerk's office of said Court on _____, 20___.

In testimony whereof, I have hereunto set my hand and affixed the seal of said Court on the day and year above written.

_____
Clerk